TERAH BENEDICT et al., trustees,

*v.*

DANIEL A. BALL et al.

A testator gave to his grandchildren (the children of his son Alexander and of his daughter Julia, the wife of Terah Benedict) the residue of his estate, charged with his debts and certain annuities, to be equally divided between them, share and share alike, and if any grandchild should, in his trustees' opinion, be dissolute or unworthy, its share should go as if it had died intestate. Alexander and Terah were to receive during their lives the income &c. of the residue, in proportion to the number of children that Alexander and Julia should respectively have at the time of the receipt of such income. At testator's death, Alexander had two children, who are both still

living, and he never had any others; Julia then had five children, four of whom are still living, one having died unmarried and under lawful age. Julia has had no other children, and is now about seventy years old. Alexander died in 1878; Julia's husband, Terah, still survives. In 1865 an agreement was made between Alexander and Julia, with her husband's consent, for a proportional division of the income. Alexander did not perform his part of this agreement, and, at his death, left unpaid certain taxes and annuities, and since then Terah has paid them and also for certain necessary repairs, which Alexander ought to have made.—*Held*, that the grandchildren took *per capita;* that on Alexander's death his children were entitled to their father's share of the income of the residue until Terah's death; that as Terah's share of that income depends upon the number of Julia's children relative to Alexander's from time to time, there can be no division of the *corpus* of the residue until after Terah's death, and that Alexander's children should reimburse Terah for his outlays on Alexander's account, under the agreement.

Bill for construction of will &c. On final hearing on pleadings and proofs.

*Mr. John R. Emery*, for complainants.

*Mr. W. S. Gummere*, for A. M. W. Ball's children.

THE CHANCELLOR.

David Ball, late of the city of Newark, died in 1859, leaving a will, by the ninth section of which he gave to his grandchildren, the children of his son, Alexander M. W. Ball, and of his daughter, Julia Benedict, wife of Terah Benedict, the residue of his estate (charged with payment of his debts and funeral expenses and certain annuities), to be equally divided between them, share and share alike, and directed his trustees, appointed by the will, to divide it among them accordingly. He further provided that it should be in the discretion of his trustees, or a majority of them, in case any of those grandchildren should be of a dissolute character, or behave in such a manner as to be unworthy, in the opinion of the trustees, or a majority of them, of the benefit of their share of that devise and bequest, so to declare by writing under their hands, which writing should have the force and effect of excluding and debarring absolutely from

4

Benedict v. Ball.

any estate, interest or benefit of that devise and bequest, the child or children named therein; and that in that case the share and interest which would otherwise have come to such child or children should go to and be vested in such person or persons as would have taken it if such child or children had died seized or possessed of it, intestate. He further provided that his son, Alexander M. W. Ball, and his son-in-law, Terah Benedict, should receive during their lives the interest, income, rents and profits of the residue in proportion to the number of children that his son Alexander and daughter Julia (Mrs. Benedict) should respectively have at the time of the receipt of such interest, income, rents and profits. When the testator died, Alexander had two children both still living, and he never had any others. Julia had five children, four of whom are still living, one having died unmarried and under lawful age. She has had no other children, and she is now about seventy years old. Alexander died in 1878. Mr. Benedict still survives. In 1865 an agreement was made between Mr. Ball and Mrs. Benedict (her husband consenting, and indeed the agreement on her part was his) for the division of the income between them, which agreement was in force up to the time of Mr. Ball's death. By it each was to pay his or her due proportion of the annuities charged on the residue, and also to pay the taxes and for repairs and insurance on the property, the income of which was assigned to him or her thereby. Mr. Benedict performed his part of the agreement in that respect, but Mr. Ball did not perform his. He left unpaid $690.32 of taxes and $33.34 for annuities, and since his death Mr. Benedict has paid $290.39 for necessary repairs upon the property which ought to have been made by Mr. Ball. The bill prays a construction of the will, that the nature and extent of the estates of Mr. Benedict and Mr. Ball and their respective children may be declared, and that an account may be taken under the agreement of 1865, and that it may be decreed that the amount paid by Mr. Benedict for the taxes &c. which ought to have been paid by Mr. Ball be paid out of Mr. Ball's estate, or retained out of his children's share of the rents and income of the residue.

The principal question submitted is whether the children of Mr. Ball and Mrs. Benedict take the residue *per stirpes* or *per capita.* The residue is given subject to the life interests of Mr. Ball and Mr. Benedict. It is argued that the fact that Mr. Benedict is entitled to a share of the income of the residue, is a sufficient reason for holding that there can be no division until his death, whether the distribution be *per stirpes* or *per capita,* because, it is urged, he is entitled to a share of the whole of the income of the residue, and hence the residue must, all of it, be kept invested during his life, to the end that he may receive his share of whatever income is derived from the whole of it. But that fact would not be enough to prevent a division in his lifetime. This court could make an equitable division of the *corpus,* to the end that he receive the interest of his share of it. Such a division was, in fact, made, as before stated, between him (in the name of his wife) and Alexander M. W. Ball. Nor would the fact that his wife is still alive, and that the presumption of law is that she may still bear children, be a reason for deferring the distribution, for this court would take notice of the course of nature, and act upon the fact that, at her age, there is no possibility of further issue. But there is another reason, to be hereafter mentioned, why the division of the *corpus* ought not to be ordered before the death of Mr. Benedict. The gift to the children of Mr. Ball and of Mrs. Benedict is *per capita,* and not *per stirpes.* Where a gift is to the children of several persons, whether it be to the children of A and B or to the children of A and the children of B, they take *per capita,* and not *per stirpes. Hawk. on Wills 113 ; 2 Jar. on Wills 111.* Nor is there, in the context of the will under consideration, any evidence of a contrary intention. It is urged that the direction in the provision for the exclusion of any of the grandchildren who may become unworthy, is evidence of an intention that the residue shall be divided *per stirpes,* but it warrants no such conclusion. The object of the testator was to give the benefit of the share of the person excluded to those who, if such person were dead, would be his or her heirs or next of kin, according as the property is real or personal. Whether the division be *per stirpes* or *per*

*capita,* a share must be set off as that to which the person ex-
cluded would have been entitled. The testator does not provide
that such share shall go to the other distributees, or any of them,
but provides for a substitution of those who would be the next
of kin or heirs (as the case may be) of the excluded person, if he
or she were dead, in his or her place. The character of the divi-
sion will not be affected by this provision. The principle of the
cases cited on this head does not apply. They are cases in which
it has been held that, where the testator directs that an equal
division be made, and directs, also, that the share of a benefi-
ciary dying before the time of distribution, shall go, not to all
the members of the class, but to part of the class only, it is evi-
dence of his intention that the division shall be *per stirpes,*
because the shares of part of the class would be augmented by
the death of a beneficiary, and an equal division of the fund
among all the beneficiaries would, therefore, be impracticable ;
and hence it must be presumed that, when the testator directed
an equal division, he meant an equal division by stocks. Here
there is no provision by which the shares of any of the benefi-
ciaries would, necessarily, be augmented in the specified event,
for the excluded person, if a male, might have a wife and chil-
dren ; if a female, might have a husband, or husband and
children. In such case, there would be no augmentation of
shares. The testator's intention was to preserve the share as a
distinct share in the distribution, but to give it to those who
would be next of kin or heirs of the excluded person, if he or
she had died, instead of to the excluded person. There is evi-
dence, in the context of the will, of an intention that the divi-
sion should be *per capita.* It is found in the gift of the income
to Messrs. Ball and Benedict, in proportion to the number of
their respective children. The income is to be distributed, not
*per stirpes,* in which case each of them would take half, but,
substantially, *per capita*—that is, according to the number of
children of each ; and the proportion is to be according to the
number of children for the time being.

There is no ground for holding that the testator intended that,
on the death of either Mr. Ball or Mr. Benedict, the survivor

Benedict *v.* Ball.

should take the whole of the income for his life.   There is nothing from which an implication of cross-remainders can arise.   On the contrary, the scheme of the disposition of the residue is to give the income to the families through their respective fathers, until the division of the residue shall take place.   The testator, indeed, by the terms of the gift, limits the bequest of the income to the fathers for their respective lives, and does not express his intention as to what shall become of the share given to either of the fathers on his death, before distribution.   The gift, however, is of the *corpus* of the residue to the children, subject to the gift of the income to the fathers for life.   And he intended that, on the death of either of the fathers, his children should at least have their share of the interest of the *corpus*.

If there are not cross-remainders in the income in the fathers, and there is to be no division of the *corpus* until the death of the survivor of the fathers, the children of the decedent are to have up to that time the share of the income which would have been their father's had he lived.   It is by no means probable that the testator intended that in case one of the fathers should die immediately after him, the decedent's family should not have the income of their shares of the residue, but only part of it—that proportion of it which the number of the children of that family would bear to the number of all the children of both families, and that the children of the other family should have the rest of it until the time of division ; he did not mean, for example, that if Mr. Benedict should die immediately after him, his (Mr. Benedict's) children should not have five-sevenths of the income until division of the *corpus*, but only five-sevenths of their father's share of it (which was five-sevenths), while Alexander's children should have two-sevenths of it, their father continuing to have his share of the whole income.   The testator clearly did not contemplate such a disposition of the income under such circumstances.   It is but reasonable to suppose that had he intended such a result he would have expressly provided for it. He has in fact said nothing expressly on the subject, and has made no provision for the contingency, in explicit terms.   But he has provided that the distribution of the income shall, in the

lifetime of the fathers, be in proportion to the number of chil-
dren in the respective families from time to time, which is of
itself some evidence of an intention on his part that the income
shall, after the death of one of the fathers, go for the benefit of
the family in the proportion in which the father would have been
entitled to it.   He gives the income of the share of his daughter's
children, it may be observed, to their father for life, and not to
her.   The reason of this undoubtedly was that the father, and
not the mother, is the person who usually provides for the family.
*Woolston* v. *Beck, 7 Stew. Eq. 74,* differs from this case in some
respects.   There, there was a gift of the use of land to two daugh-
ters of the testator for their respective lives in unequal shares, and,
after their respective deaths, to the children of both in certain pro-
portions.   It was held that on the death of one of the daughters
the share of the rents and profits which had been hers went to
the remaindermen.   Here there is the gift of the *corpus* of the
residue to the children of the testator's son and daughter, to be
divided *per capita,* with a gift of the income of the children's
shares to their respective fathers for life.   The testator himself
divided the income between the families.   It is true he gives it
to the fathers for life, but it is reasonable to suppose that his in-
tention was that the children should have the income of their
respective shares until the distribution of the *corpus,* that while
their respective fathers lived it should go to the fathers, and that
on the death of either of the fathers his children should them-
selves have it.   The share of the income which would have gone
to Alexander will, from his death, go to his children.   In view
of the fact that the share of the income of the residue to which
Mr. Benedict will be entitled during his life will be in the pro-
portion that the number of his children bears to the number of
Alexander's from time to time, there can be no distribution of
the *corpus* until his death.   It is suggested that Alexander's
share of the income was given not only for his own life, but
also for the life of Mr. Benedict, and that therefore, at his death,
his interest passed to his legal representatives; but the gift is to
him expressly for his own life, and it was not intended by the
testator that after Alexander's death the share of the income

given to him should go to his creditors. It is, however, enough to say that, as already remarked, the gift to Alexander is only for his own life. In the view I take of the matter, the children of Alexander should, out of their share of the income, repay to Mr. Benedict the money paid by him after their father's death for taxes, arrears of annuities, insurance and necessary repairs, which under the agreement between him and Mrs. Benedict, he ought to have paid. No objection is made to the agreement on the ground of unfairness, inequality or otherwise.